**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Dealer Store Owners Association, Inc.,

                    Plaintiff,

                                                    **MEMORANDUM OPINION**
          v.                                        **AND ORDER**
                                                    Civil No. 05-1256 ADM/JSM

Sears, Roebuck and Co.,

                    Defendant.

---

W. Michael Garner, Esq., Dady & Garner, PA, Minneapolis, MN, argued for and on behalf of Plaintiff.

James A. Klenk, Esq., and Alan H. Silberman, Esq., Sonnenschein Nath & Rosenthal, Chicago, IL, and Todd Wind, Esq., and Richard J. Wegener, Esq., Fredrikson & Byron, P.A., Minneapolis, MN, argued for and on behalf of Defendant.

---

## I. INTRODUCTION

On November 1, 2005, oral argument before the undersigned United States District Judge was heard on Defendant Sears, Roebuck and Co.'s ("Sears" or "Defendant") Motion to Dismiss for Lack of Subject Matter Jurisdiction [Docket No. 2]. Argument was also heard on Plaintiff Dealer Store Owners Association, Inc.'s ("DSOA" or "Plaintiff") Motion for Partial Summary Judgment [Docket No. 13]. In its Complaint [Docket No. 1], Plaintiff DSOA alleges Sears has breached, or is threatening to breach, its contracts with Sears Dealer Stores represented by the DSOA. DSOA also alleges violations of various state law statutes. Sears moves to dismiss, arguing DSOA does not have proper associational standing to maintain this lawsuit. For the reasons set forth herein, Sears' Motion is granted and DSOA's Motion is denied.

## II.  BACKGROUND

DSOA is an association formed for the "purpose of preserving and enhancing the value

of the business of Sears dealers." Compl. ¶ 4.  The association's members, approximately 200 in

number according to DSOA, are all owners of Sears Dealer Stores ("Dealers"), and reside in 44

states.  Id.  Nationwide, Sears maintains over 800 Dealers.  Id.  DSOA was formed shortly before

commencement of this lawsuit.  Sears is a national retailer owning and operating department

stores across the country.  In the early 1990s, Sears began a chain of stores called Sears Dealer

Stores.  Id. ¶ 8.  The Dealers offer products from Sears-owned brands such as Kenmore

appliances and Craftsman tools.  Id. ¶ 9.  Dealers are paid a commission on sales.  Id. ¶ 10.

Although the Dealer is responsible for expenses required to conduct sales activities, inventory is

provided and owned by Sears.  Smith Decl. [Docket No. 5] ¶ 3.  Each Dealer has entered into an

agreement with Sears titled the Dealer Store Owner Agreement ("Agreement").  Compl. ¶ 13.

DSOA alleges the Agreement consists not only of the written agreement, but also the

representations made by, correspondence between, and the course of dealing between the parties.

Id.  In 2004, Sears acquired Kmart Corporation.  Id. ¶ 19.  DSOA alleges that after acquiring

Kmart, Sears announced it would sell its brands through Kmart stores.  DSOA claims this

potentially will place Kmart in direct competition with Dealers.  Id. ¶ 21.

      In its Complaint, DSOA alleges Sears has breached, or is threatening to breach, the

Agreements with the Dealers through sales of Sears brands at Kmart stores, and by canceling

advertising it allegedly promised to provide.  DSOA seeks a declaration of the Dealers'

contractual rights under the Agreement.  DSOA also asks for a declaration stating that the

Dealers qualify as franchises under various states' franchise laws, and are therefore subject to the

franchise requirements of several states, including California, Connecticut, Indiana, Virginia,

Minnesota, Wisconsin, Nebraska, New Jersey, Oregon, Arkansas, Delaware, New York,

Michigan, Maryland, Illinois, Iowa, Rhode Island, South Dakota, and Washington.

## III. DISCUSSION

### A.     Motion to Dismiss

As a threshold matter, the parties dispute the proper standard under which the Motion to Dismiss must be decided.  Although DSOA argues it is entitled to the presumption that the Complaint's allegations are true, this presumption applies to Federal Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted.  Sears' Motion, however, is predicated upon Rule 12(b)(1), which allows for dismissal if subject matter jurisdiction is lacking.  In the instant case, Sears makes a factual attack on DSOA's claim that subject matter jurisdiction exists.  In Osborn v. United States, the Eighth Circuit addressed the burden of proof in this situation:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction–its very power to hear the case–there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

918 F.2d 724, 730 (8th Cir. 1990).  Thus, DSOA has the burden of demonstrating jurisdiction, and the allegations in its Complaint are not entitled to a presumption of truth.

In its Motion to Dismiss, Sears argues DSOA fails to meet the requirements for associational standing.  "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  Hunt v.

Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).  The Hunt Court explained:

"[S]o long as the nature of the claim and of the relief sought does not make the individual

participation of each injured party indispensable to proper resolution of the cause, the association

may be an appropriate representative of its members, entitled to invoke the court's jurisdiction."

Id. at 342-43 (quoting Warth v. Seldin, 422 U.S. 490, 511 (1975)).  Specifically, Sears avers

DSOA fails to meet the first and third prongs of the test for associational standing.

**1.      Standing of Individual Association Members**

Sears alleges that DSOA fails to meet the first prong of the associational standing test,

which requires that the individual members of the association would otherwise have standing to

sue in their own right.  Sears argues that because no facts about any one particular Dealer can be

deduced from the Complaint, DSOA fails to demonstrate that any of its individual members

could maintain standing to bring its own claim.  Thus, according to Sears, DSOA has failed to

identify a single plaintiff that can allege a "concrete, particularized, actual injury in fact."  Lujan

v. Defenders of Wildlife, 504 U.S. 555, 556, 563-64 (1992).

Certainly, the abstract nature of the Complaint makes it difficult to discern precisely what

an individual Dealer's allegations might be, as the Complaint does not make clear what

additional amendments to the Agreement any one Dealer might allege.  Further, the Complaint

does not attach a copy of the written agreement between Sears and any of the Dealers.  However,

assuming that the precise nature of the Agreement can be determined for at least one dealer,

declaratory judgment on the Dealer's contractual rights may well be appropriate.  Further, given

the parameters of one Agreement, the Court may well be in a position to determine whether that

Agreement meets the definition of a franchise under various states' franchise laws.  However,

given the fact that DSOA has failed to attach a copy of the written agreement to the Complaint and to explicate the details of any single Agreement between Sears and the Dealers, the Court lacks the information necessary to determine whether the first prong of the associational standing test is met.  Thus, the third prong of the test must be examined.

### 2.      Participation of Individual Members

Sears primarily relies on the argument that the third prong of the associational standing test is not met–that is, the claims asserted by DSOA require the individual participation of the members.  Specifically, Sears contends the allegations made by DSOA concerning the terms of the Agreement between Sears and the Dealers require scrutiny on a Dealer-by-Dealer basis, because DSOA makes claims that the Agreement may have been modified by additional promises made by Sears and through Sears' course of dealing.  Compl. ¶ 13.  For example, DSOA alleges that "many, if not most" Dealers may have agreed to something other than that embodied within the written agreement because of a videotape presentation played by Sears before the written agreement was signed.  Id. ¶ 12.  Additionally, DSOA alleges each Dealer has entered into an Agreement with Sears "that consists of the written agreement, the representations made by the parties, the correspondence between them, and the course of dealing between them over the years."  Id. ¶ 13.  Sears also contends that the relief DSOA seeks requires individual investigation of each Dealer.  In its allegations, DSOA alleges a number of actions by Sears which might affect certain Dealers, but not others.  Id. ¶¶ 20, 23.  Further, DSOA asks for a declaration that certain violations result in compensation.  Id. ¶ 31.  Sears contends that because DSOA alleges that each Agreement is unique, each individual Dealer must be analyzed to determine which, if any, breaches took place.

5

Sears relies on DDFA of South Florida, Inc. v. Dunkin' Donuts, Inc. in support of its argument. No. 00-7455-CIV., 2002 WL 1187207 (S.D. Fla. May 22, 2002). In DDFA, the plaintiff association represented a number of Dunkin' Donuts franchises. DDFA sought to bring its case in federal court based on associational standing, alleging breach of contract and tortious conduct against Dunkin' Donuts, Inc. The trial court granted defendant's dismissal motion on the grounds that associational standing did not exist. The court first noted that, unlike most associational standing cases, DDFA did not challenge a statute or government regulation, but rather sought a declaratory judgment relating to uniform franchise agreements. Id. at *7. The court then examined United States Supreme Court precedent, finding that in Warth v. Seldin, the Supreme Court held that an association consisting of construction firms was forestalled from seeking damages on behalf of its members for lost profits because "whatever injury might have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." Id., quoting Warth, 422 U.S. at 515-16. The DDFA court held:

> DDFA's allegations do not set forth a discrete legal issue. Instead, the Amended Complaint sets forth allegations of tortious conduct and breach of contract. As such, the Amended Complaint requires individual determinations as to whether DDI committed various torts against certain of its members and whether DDFA's members or DDI itself complied with the provisions of the franchise agreement. Accordingly, the Complaint does not raise a "pure question of law," which can be considered without the individual participation of DDFA's members.

Id.

In response to Sears' arguments, DSOA argues that, because the written agreements between Sears and the Dealers are uniform, a declaratory judgment regarding the Agreements is appropriate. DSOA cites two cases to support its argument. The first, National Assoc. of State

Farm Agencies, Inc. v. State Farm Mut. Automobile Ins. Co., is a Washington, D.C. Superior

Court case.  Bus. Franchise Guide (CCH) ¶ 12,431 (D.C. Superior Ct. Oct. 22, 2002).  Although

Washington, D.C. has adopted the federal test for associational standing, the case is of limited

persuasive value.  In State Farm, the plaintiff association sought a declaratory judgment

interpreting a standard contract between State Farm and its agents.  Id.  However, the plaintiff

did not claim that the standard written agreements were modified by additional communications

or the course of dealing between the individual agents and State Farm.  Thus, the question of

whether the agents represented by the plaintiff in State Farm case passed the federal court's

associational standing test is distinctly different than the case at bar.  Here, DSOA alleges the

Agreement consists of more than simply the standard written agreement.

       DSOA also relies for authority on National Assoc. of Professional Allstate Agents v.

Allstate Ins. Co., a federal case in the Middle District of Florida.  Case No. 8:01-cv-2137-T-

24MSS, (M.D. Fla. April 22, 2002).  Similar to State Farm, Allstate deals with insurance agents,

all of whom maintained identical contracts with Allstate.  In fact, the court in Allstate noted that

each member of the plaintiff association "operates under the same contract." Id. at 8.  Thus, both

State Farm and Allstate differ from the case at bar in one critically important way.  In the instant

case, DSOA has not alleged that the entering of the Agreements between the Dealers and Sears

is uniform, but that only the written portion is the same.[1]  DSOA also attempts to distinguish

DDFA, arguing that DSOA is seeking an interpretation of specific contractual rights.  DSOA

argues that in DDFA, the court noted that differences in the interpretation of specific contract

---

       [1] Although not before the Court at this time, serious doubts exist as to whether DSOA can produce admissible extrinsic evidence of contemporaneous statements or a course of dealing by Sears that would modify the written agreement without running afoul of parol evidence rules.

language could be resolved through the issuance of a declaratory judgment.  <u>Id.</u> at *5.

Here, although the written agreements may be the same, a central theory in DSOA's case is that the Dealers' Agreements do not consist solely of the written agreement, but also embody conversations as well as the course of business between the Dealers and Sears.  Although DSOA argues that the Complaint alleges a uniform Agreement, the allegations of the Complaint state otherwise.  An individual inquiry into each Dealer's Agreement needs to be undertaken to determine whether any breach or threatened breach has occurred.  It is not sufficient to allege that "many" or "most" of the issues apply to the Dealers, particularly given the allegation that communications outside the written agreement must be considered as part of the Agreement.  The same issue dooms DSOA's declaratory judgment requests.

Further, no conclusion on whether the Dealers meet individual state's definitions of "franchise" can be made without determining the precise nature of the Agreements between the Dealers and Sears.  DSOA asks the Court to declare that under the Agreements, the Dealers qualify as franchises for purposes of franchise law under the laws of nearly twenty states.  However, the fact that the Agreements may differ render this exercise futile.  Moreover, there is no indication or allegation that every Dealer is subject to the franchise laws of each state named in the Complaint.  Thus, a declaratory judgment on these counts is inappropriate.

Although DSOA attempts to distinguish <u>DDFA</u> on the grounds that <u>DDFA</u> held that differences in the interpretation of contract terms could be resolved through a declaratory judgment, it is not the fact that DSOA is seeking declaratory relief through the interpretation of contractual terms that is fatal to DSOA's associational standing claims.  Rather, it is the fact that DSOA alleges that each contract is inherently individual.  The Court finds the reasoning of

DDFA applies here.

Additionally, although the Complaint purportedly only seeks declaratory relief, DSOA's breach of contract count also requests a declaration of damages.  As the Supreme Court held in Warth, proof of actual injury and the extent of any such injury would require individualized proof, and is therefore inappropriate for disposition in an associational standing context.  Warth, 422 U.S. at 515-16.  Here, to determine whether any alleged breach caused a Dealer damage, each Dealer's own Agreement with Sears would have to be explained, along with any actions by Sears which caused the breach, followed by an examination of the Dealer to determine what damages it incurred.  This is precisely the type of scenario associational standing cases seek to avoid.

Finally, this case does not fit the typical associational standing case, where a statute or regulation is being challenged.  DDFA at *7.  Associational standing is not appropriate where a plaintiff seeks a declaration of rights on a group of contracts that are not uniform.  Thus, DSOA fails to meet the third prong of the associational standing test, and Sears' Motion must be granted.

**B.     Motion for Partial Summary Judgment**

DSOA moves for partial Summary Judgment on Count Eight of its Complaint, which requests a declaration that the relationship between the Dealers and Sears constitutes a franchise within the meaning of the Minnesota Franchise Act.  Because Sears' Motion to Dismiss is granted, however, DSOA's Motion must be denied as moot.

9

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Defendant Sears, Roebuck and Co.'s Motion to Dismiss for Lack of Subject Matter

Jurisdiction [Docket No. 2] is **GRANTED**; and

2. Plaintiff Dealer Store Owners Association, Inc.'s Motion for Partial Summary

Judgment [Docket No. 13] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 12, 2006.